**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **TERESA GARRARD-KAISER**, an individual, | **CIVIL ACTION** |
| Plaintiff, | **Case No. 8:26-cv-952** |
| v. | **Judge:** |
| **CENTURION OF FLORIDA, LLC**, a Florida limited liability company, | **Mag. Judge:** |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, TERESA GARRARD-KAISER ("GARRARD-KAISER" or "Plaintiff") by and through undersigned counsel, and states the following for her Complaint:

## CAUSES OF ACTION

1. This is an action brought under the Family & Medical Leave Act (FMLA), Florida's Private Whistleblower Act (FWA), and Florida's Public Whistleblower Act (PWA) for (1) interference in violation of the FMLA, (2) retaliation in violation of the FMLA, (3) retaliation in violation of the FWA, and (4) retaliation in violation of the PWA.

1

## PARTIES

2. The Plaintiff, TERESA GARRARD-KAISER ("GARRARD-KAISER") is an individual and a resident of Florida who at all material times resided in Hardee County, Florida. At all material times, GARRARD-KAISER performed work primarily in Hardee County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. GARRARD-KAISER was an employee within the contemplation of the FMLA, FWA, and PWA. Venue for this action lies in the Middle District of Florida, Tampa Division.

3. The Defendant, CENTURION OF FLORIDA, LLC ("Defendant") is a Florida limited liability company with a principal place of business at 21251 Ridgetop Circle, Suite 150, Sterling, VA 20166. Defendant was GARRARD-KAISER's employer within the meaning of the FMLA, FWA, and PWA as it employs in excess of 50 employees. Defendant provides healthcare services at Hardee Correctional Institution in Hardee County, Florida, and has contracts with the State of Florida to operate healthcare services at state correctional facilities.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. §1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367. This Court also has subject matter jurisdiction over the FWA and PWA

claims under 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 and the parties are completely diverse.

5. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Hardee County, Florida, which is within the Middle District of Florida. Venue is proper in the Tampa Division under Local Rule 1.04 since the action accrued primarily in Hardee County, which is within the Tampa Division.

6. GARRARD-KAISER received a Notice of Receipt of Whistleblower Complaint from the Florida Commission on Human Relations on February 9, 2026, Case No. FCHR 2026119357. Plaintiff has exhausted any available administrative or contractual remedies with regard to her whistleblower claims.

## GENERAL ALLEGATIONS

7. GARRARD-KAISER began her employment with the Defendant on or about July 2016 and was employed as a Nursing Supervisor.

8. GARRARD-KAISER performed her assigned duties in a professional manner and was very well qualified for her position.

9. In fact, GARRARD-KAISER received a promotion during her employment and maintained positive performance with no significant negative

3

performance issues for nearly a decade prior to the Defendant's adverse employment actions.

10. GARRARD-KAISER suffers from Type 2 Diabetes with complications including Diabetic Ketoacidosis (DKA).

11. GARRARD-KAISER's condition impacts her ability to perform major life activities and requires ongoing medical management and the administration of insulin throughout her workday.

12. In or about September 2025, GARRARD-KAISER's medical condition required hospitalization for DKA from September 28-30, 2025. GARRARD-KAISER requested and was granted medical leave for her serious health condition. GARRARD-KAISER informed her Director of Nursing of her hospitalization, and they initially told her it was acceptable and to update them.

13. Following GARRARD-KAISER's return from leave in October 2025, within one week, supervisors began targeting her, telling her she was doing a bad job despite no change in her actual performance.

14. The Defendant removed GARRARD-KAISER from the office she was previously allowed to use and denied her overtime opportunities that she had previously been permitted.

15. GARRARD-KAISER was denied access to a private office space to take her insulin, which is medically necessary for her Type 2 Diabetes. The

4

Director of Nursing would actively fight with GARRARD-KAISER and prevent her from accessing the office or other private space needed to safely administer her insulin during work hours.

16.    GARRARD-KAISER was constantly subjected to performance meetings despite her previously good performance record. GARRARD-KAISER received a written warning for insubordination, which she objected to in writing.

17.    GARRARD-KAISER sent an email to Human Resources to contest the write-up, specifically stating that she believed this was retaliation after her medical leave and related to her medical condition. Despite her protected complaint, the retaliation continued and escalated.

18.    GARRARD-KAISER's medical condition required a second hospitalization for chest pain related to Diabetes. Following this hospitalization, GARRARD-KAISER was cleared by her medical providers to return to work.

19.    However, the Defendant refused to allow GARRARD-KAISER to return to work, claiming they were "reviewing her paperwork." The last day GARRARD-KAISER actually worked was November 5-6, 2025. GARRARD-KAISER made multiple attempts to reach out to the Defendant regarding her return to work, but they continuously stated they were still reviewing the

paperwork. The Defendant's standard practice is to review such paperwork within approximately five days, yet they took months to complete this review.

20.    During her employment and following her medical leaves, GARRARD-KAISER became aware of violations of law, rules, and regulations occurring at Hardee Correctional Institution related to patient care, healthcare standards, and workplace safety.

21.    GARRARD-KAISER objected to and reported these violations of law to her supervisors and to the Defendant. GARRARD-KAISER also made complaints to the Office of the Chief Inspector General regarding the Defendant's illegal activities, policies, and practices.

22.    The Defendant was aware of GARRARD-KAISER's complaints and protected disclosures regarding violations of law occurring at the state correctional facility.

23.    On January 27, 2026, after returning from an intermittent FMLA day off,  Defendant put GARRARD-KAISER on an unpaid administrative suspension and then or about February 11, 2026, the Defendant terminated GARRARD-KAISER's employment. This termination was the culmination of months of retaliation following her requests for medical leave and her protected complaints regarding violations of law.

24.    GARRARD-KAISER was very well qualified for her position and had not received any significant negative performance issues prior to suddenly

being terminated by the Defendant less than five months after she engaged in statutorily protected activity.

25.    At all material times, the Defendant was aware of GARRARD-KAISER's requests for FMLA leave and complaints regarding violations of law, which are the bases for its retaliatory employment practices toward her.

## COUNT I - VIOLATION OF THE FAMILY MEDICAL LEAVE ACT ("FMLA") – INTERFERENCE

26.    The Plaintiff hereby incorporates by reference Paragraphs 1-25 in this Count by reference as though fully set forth below.

27.    GARRARD-KAISER qualified for FMLA leave since she began suffering from a serious health condition including Type 2 Diabetes with complications of Diabetic Ketoacidosis (DKA), GARRARD-KAISER had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

28.    GARRARD-KAISER informed the Defendant of her need for leave for her serious health condition, including her hospitalizations from September 28-30, 2025 and her subsequent hospitalization for DKA.

29.    The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days,

absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification.

30. If the Defendant were to have decided that GARRARD-KAISER's absence was not FMLA-qualifying, it must have notified her of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

31. The Defendant has never provided GARRARD-KAISER with any notice disqualifying her FMLA leave.

32. In fact, the Defendant determined that GARRARD-KAISER was eligible for leave under the FMLA and yet refused to allow her to take leave without negative consequences, ultimately terminating her employment because of her request for federally protected medical leave.

33. GARRARD-KAISER engaged in activity protected by the FMLA when she requested leave due to her serious health conditions, consistently informing the Defendant of the same.

34. The Defendant knew, or should have known, that GARRARD-KAISER was exercising her rights under the FMLA and was aware of GARRARD-KAISER's need for FMLA-protected absence.

35. GARRARD-KAISER complied with all of the notice and due diligence requirements of the FMLA.

36. The Defendant was obligated, but failed, to allow GARRARD-KAISER to take FMLA leave without discrimination and to maintain

8

GARRARD-KAISER's employment as an employee who requested FMLA leave under 29 U.S.C. § 2614(a)(1); 29 CFR § 825.215(a).

37.     A causal connection exists between GARRARD-KAISER's request for FMLA-protected leave and her termination from employment with the Defendant because the Defendant denied GARRARD-KAISER a benefit to which she was entitled under the FMLA.

38.     As a result of the above-described violations of FMLA, GARRARD-KAISER has been damaged by the Defendant in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## COUNT II - VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT ("FMLA") – RETALIATION

39.     The Plaintiff hereby incorporates by reference Paragraphs 1-25 in this Count by reference as though fully set forth below.

40.    GARRARD-KAISER qualified for FMLA leave since she suffered from a serious health condition including Type 2 Diabetes with complications of Diabetic Ketoacidosis (DKA), the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider and GARRARD-KAISER worked more than 1,250 hours in the preceding 12 months of employment with the Defendant.

41.    GARRARD-KAISER informed the Defendant of her need for leave due to her serious health conditions.

42.    The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification.

43.    If the Defendant were to have decided that GARRARD-KAISER's expected absence was not FMLA-qualifying, it must have notified her of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

44.    The Defendant has never provided GARRARD-KAISER with any notice disqualifying her FMLA leave.

45.    In fact, the Defendant determined that GARRARD-KAISER was eligible for leave under the FMLA but then terminated her employment because of her request for federally protected medical leave.

10

46.     GARRARD-KAISER engaged in activity protected by the FMLA when she requested leave due to her serious health conditions, consistently informing the Defendant of the same.

47.     The Defendant knew that GARRARD-KAISER was exercising her rights under the FMLA.

48.     GARRARD-KAISER complied with all of the notice and due diligence requirements of the FMLA.

49.     A causal connection exists between GARRARD-KAISER's request for FMLA-protected leave and the Defendant's termination of her employment.

50.     The Defendant retaliated by altering the terms and conditions of GARRARD-KAISER's employment by terminating GARRARD-KAISER's employment because she engaged in the statutorily protected activity of requesting and taking FMLA leave. The Defendant terminated her because she engaged in this statutorily protected activity.

51.     The Defendant engaged in willful and intentional retaliation in violation of the FMLA by terminating GARRARD-KAISER's employment (and causing her to remain unemployed) because she engaged in activity protected by the FMLA.

52.     As a result of the above-described violations of FMLA, GARRARD-KAISER has been damaged by the Defendant in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled

11

to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## COUNT III - VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT

53.     Plaintiff incorporates by reference Paragraphs 1-25 of this Complaint as though fully set forth below.

54.     Plaintiff was an employee of the Defendant, a private company.

55.     At all material times, Plaintiff was to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

"An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the

12

employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

56. Plaintiff did engage in statutorily protected activity by her objections to the Defendant's illegal practices and by making complaints to the Office of the Chief Inspector General regarding violations of law, rules, and regulations occurring at Hardee Correctional Institution.

57. GARRARD-KAISER brought illegal activities, policies, and practices to the attention of her supervisors and the Defendant in writing, affording them a reasonable opportunity to correct the same.

58. Immediately after engaging in statutorily protected activity, Plaintiff suffered negative employment action, including discipline, constructive discharge, and termination, which is a direct result of this statutorily protected activity.

59. Plaintiff's termination and her engaging in statutorily protected activity are causally related.

60. The Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

13

61.     The Defendant discharged, terminated and retaliated against Plaintiff from her employment and after her employment, and otherwise retaliated against her because of her protected conduct.

62.     As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path that was anticipated from her employment.

63.     As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, Plaintiff is entitled to all relief necessary to make her whole.

WHEREFORE, Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) an injunction restraining continued violation of this act,

(b) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(c) reinstatement of full fringe benefits and seniority rights,

(d) compensation for lost wages, benefits, and other remuneration,

(e) any other compensatory damages allowable at law,

14

(f) attorney's fees, court costs and expenses, and

(g) such other relief this Court deems just and proper.

## COUNT IV - VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER ACT (PWA)

64.     Plaintiff incorporates by reference Paragraphs 1-25 of this Complaint as though fully set forth below.

65.     The Defendant is an "independent contractor" within the meaning of F.S. § 112.3187(3)(d), defined as "a person, other than an agency, engaged in any business and who enters into a contract, including a provider agreement, with an agency."

66.     The Defendant entered into contracts with the State of Florida and its agencies to provide healthcare services at Hardee Correctional Institution, a state correctional facility operated by the Florida Department of Corrections.

67.     As a Nursing Supervisor at Hardee Correctional Institution, Plaintiff performed healthcare services under the Defendant's contract with the State of Florida.

68.     Plaintiff is an "employee" within the meaning of F.S. § 112.3187(3)(e), as she is a person who performs services for and under the control and direction of an independent contractor (the Defendant) that contracts with a state agency for wages or other remuneration. In the alternative, Plaintiff is a "person" protected by the PWA.

15

69.     Plaintiff was qualified for the position that she held with the Defendant.

70.     During her employment, Plaintiff became aware of actual and suspected violations of federal and state laws, rules, and regulations committed by employees and agents of the Defendant that created and presented a substantial and specific danger to the public's health, safety, and welfare.

71.     These violations included, but were not limited to, violations of healthcare standards, patient care regulations, and workplace safety laws applicable to the provision of healthcare services at state correctional facilities.

72.     Plaintiff engaged in statutorily protected activity by disclosing these violations, in writing and signed by her, to the Office of the Chief Inspector General, which is an appropriate governmental entity having the authority to investigate, police, manage, and remedy such violations under F.S. § 112.3187(6).

73.     Plaintiff's disclosures to the Office of the Chief Inspector General made specific allegations regarding the Defendant's violations of law, rules, and regulations that created a substantial and specific danger to the public's health, safety, and welfare at Hardee Correctional Institution.

74.     Plaintiff also objected to and reported these violations to her supervisors and the Defendant.

16

75.     Plaintiff's disclosures and complaints concerned actual and suspected violations of law, rules, and regulations committed by the Defendant and its employees and agents in their provision of healthcare services under the Defendant's contract with the State of Florida.

76.     Plaintiff did suffer adverse employment action, including discipline, constructive discharge through refusal to allow her to return to work, and termination, which is causally linked to her engagement in statutorily protected activity.

77.     Plaintiff's complaints and disclosures constitute protected activity under F.S. § 112.3187 because her complaints and disclosures were concerning unlawful activities and violations that created substantial and specific dangers to public health, safety, and welfare.

78.     Said protected activity was the proximate cause of the Defendant's negative employment actions against Plaintiff, which included Plaintiff's termination.

79.     Instead of investigating Plaintiff's complaints and addressing the violations of law she reported, the Defendant retaliated against Plaintiff by subjecting her to adverse personnel actions and ultimately terminating her employment.

80.     The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the PWA.

17

81.    As a direct and proximate result of the violations of the PWA, as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

82.    As a direct and proximate result of the violations of the PWA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, Plaintiff is entitled to all relief necessary to make her whole as provided for under the PWA.

83.    As a direct and proximate result of the Defendant's actions, Plaintiff has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

84.    Plaintiff has exhausted her administrative remedies by filing a complaint with the Florida Commission on Human Relations, which issued a Notice of Receipt of Whistleblower Complaint on February 9, 2026, Case No. FCHR 2026119357, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Injunctive relief directing the Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

ii. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi. Temporary reinstatement under F.S. §112.3187(9)(f);

vii. Reasonable attorney's fees plus costs;

viii. Compensatory damages, and;

ix. Such other relief as this Court shall deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Demand is hereby made for a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: April 2, 2026

<u>**s/ Benjamin H. Yormak**</u>
Benjamin H. Yormak
Florida Bar Number 71272

19

Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com